<u>NOT FOR PUBLICATION</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DUNKIN' DONUTS INCORPORATED, et al., | Civil Action No.: 02-243 (JLL) |
| Plaintiffs, | |
| v. | |
| DOUGH BOY MANAGEMENT, INC., et al., | **O P I N I O N** |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court on the motion for summary judgment of Plaintiffs

Dunkin' Donuts Incorporated and Dunkin' Donuts USA, Co. (hereinafter collectively

"Plaintiffs") on Defendants' counterclaims, pursuant to Rule 56 of the Federal Rules of Civil

Procedure. The Court has considered the papers submitted by the parties, as well as the oral

arguments of the parties held on May 17, 2005. For the reasons that follow, Plaintiffs' motion

for summary judgment [Docket #82] is GRANTED as to Counts I and III of Defendants'

counterclaims, and DENIED as to Count II of Defendants' counterclaims.

## BACKGROUND

### I.    Factual Background

This case stems from a franchise relationship between Plaintiffs and Defendants. The

underlying action is one for breach of contract based on the operation of four Dunkin' Donuts franchises by the Defendants.[1]  On November 15, 1999, Plaintiffs filed a Complaint against Defendants in a related case styled: <u>Dunkin' Donuts, Inc. v. Dough Boy Management, Inc.</u>, Civil Action No. 99cv5388  (hereinafter referred to as "Dunkin' I").  Dunkin I was administratively dismissed by this Court and on June 26, 2003 Plaintiffs filed their Second Amended Complaint in this action (hereinafter referred to as "Dunkin' II") incorporating the claims brought in the earlier filed action.

***The Parties:***

Plaintiff Dunkin' Donuts Incorporated ("Dunkin'") is a Delaware corporation with its principal place of business in Randolph, Massachusetts.  Dunkin' is engaged in the business of franchising independent business persons to operate "Dunkin' Donuts" shops throughout the United States.  Plaintiff Dunkin' Donuts USA, Inc. ("Dunkin' USA") is a Michigan corporation with its principal place of business in Southfield, Michigan.

Defendant Dough Boy Management is an owner and operator of a Dunkin' Donuts shop located at 2903 Route 23, West Milford ("the Dough Boy/Newfoundland shop").  Dough Boy is a franchisee pursuant to the Franchise Agreement dated July 20, 1993.  This shop produces the doughnuts and other products sold at all four of Defendants' shops.

Defendant Double-D I, L.L.C., is an owner and operator of a Dunkin' Donuts shop in Florida, New York ("the "Double-D I/Florida shop").  Double-D I is a franchisee pursuant to the

---

[1]On July 30, 2004, the parties stipulated to dismissal with prejudice of Counts IX, X, XI, XII and XIII of Plaintiffs' Second Amended Complaint.  Therefore, the fraud, trademark infringement, trademark dilution, and unfair competition claims are no longer at issue.

Franchise Agreement dated March 1, 1996.

Defendant Double-D II**,** L.L.C., is an owner and operator of a Dunkin' Donuts shop located at 1521 Union Valley Road, West Milford ("the Double-D II/West Milford shop"). Double-D II is a franchisee pursuant to the Franchise Agreement dated August 27, 1999.

Defendant Double-D III, L.L.C., is an owner and operator of a Dunkin' Donuts shop located at Route 94 and Church Street, Vernon, NJ ("the Double-D III/Vernon shop"). Double-D III is a franchisee pursuant to the Franchise Agreement dated November 24, 1999.

Defendant Dollars for Donuts, NWNJ, L.P., is the operating entity for the Dough Boy/Newfoundland shop, which is the shop that produces the doughnuts and other products sold at all four of Defendants' shops. The four non-producing shops are called "satellite shops."

Defendant Vernon Merritt IV, a citizen of New Jersey, is a franchisee for the Dough Boy/Newfoundland shop, pursuant to the Dough Boy Franchise Agreement. Mr. Merritt executed personal guaranties under which he agreed to perform and be bound by the obligations of Defendants Double-D, I, II and III under their respective Franchise Agreements with Dunkin'.

Defendant Sandra Merritt, a citizen of New Jersey, executed personal guaranties under which she agreed to perform and be bound by the obligations of Defendants Double-D I, II and III under their respective Franchise Agreements with Dunkin'. Both Mr. and Mrs. Merritt have been active in the operation of the Dough Boy Network shops.

Defendant Gregory Pier, a citizen of New Jersey, executed personal guaranties under which he agreed to perform and be bound by the obligations of Defendants Double-D I, II and III under their respective Franchise Agreements with Dunkin'.

Defendant John F. Higgins, a citizen of New Jersey, is a member of, and has a five

-3-

percent ownership interest in, Double-D, I, II and III.

***Defendants' Counterclaims:***

| | | |
|---|---|---|
| Count I | Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing |
| Count II | Violation of New Jersey Franchise Practices Act, |
| Count III | Promissory Estoppel |

***The Four Franchises:***

On May 18, 2000, Dunkin' issued a Notice of Default and Termination with respect to the Dough Boy Network franchises. The alleged defaults under the Franchise Agreements included: operating two locations as Dunkin' Donuts franchisees without Franchise Agreements for those locations; failing to accurately report Gross Sales to Dunkin' Donuts; failure to pay franchise and advertising fees to Dunkin' Donuts; and failure to properly maintain accounting records. On April 10, 2001 (for failure to maintain Dunkin's standards for health, sanitation and safety) and November 19, 2001 (for failure to maintain accurate books and accounts), Dunkin' sent Defendants Dough Boy Management, Inc., Double-D I, Double-D II, Double-D III, Mr. Merritt, and Mr. Pier Supplemental Notices of Termination. On September 6, 2002 (for material misstatements and omissions in applications for franchises and false statements on tax returns), Dunkin' sent Defendants Dough Boy Management, Inc., Double-D I, Double-D II, Double-D III, Mr. Merritt, Mrs. Merritt, and Mr. Pier a Supplemental Notice of Termination. Each notice explained that if Defendants contested the claimed defaults and contended that termination of their franchises was not justified, Dunkin would "not enforce this termination by itself," and would "submit the matter to a court to determine which party is right." (Plaintiffs' Ex. 1(E)-(H)).

-4-

The Notice further provided:

> During the time between the effective date of this Notice and any judicial
> determination, Dunkin' Donuts and its subsidiaries will continue to honor their
> obligations under the Franchise Agreement and any other agreements as if those
> obligations were still in effect.  This interim arrangement is to create a framework
> for preserving rights while the issues are being decided. . . .

(Plaintiffs' Ex. 1(E)).  If this Court ultimately concludes that there is no good cause for the

termination, the Notice explains that the Notice will be void and the relationship will continue as

before.

Plaintiffs advise that the manuals and guidelines which it provides to franchisees, set

forth standards of health, sanitation and safety, and also procedures and standards applicable to

the operation of a Dunkin' Donuts shop.  (Laudermilk Aff. ¶¶ 15-16).  These standards for

health, sanitation and safety are based on the U.S. Public Health Service's Model Food Code.

(Pl. Ex. 10, Grottenthaler Depo. at 4:15-17; 39:18-19).

In a previously filed Declaration by Mr. Merritt, he attested that Defendants' shops "are

extremely well-maintained."  (Pl. Ex. 6, Merritt Decl. ¶ 9).  Mr. Merritt represented that his

shops were operated in accordance with Dunkin's standards and procedures and that none of the

standards violations found by Dunkin' at Defendants' shops really existed.  (Pl. Ex. 6, Merritt

Decl. ¶¶ 9-13, 15-18, 22-23, 26-29, 34).  He further testified at his deposition that Defendants'

operation of their shops was "among the very best, as it's always been, of Dunkin' Donuts

franchisees."  (Pl. Ex. 3, Merritt Depo. At 382:14-16).  Defendants' District Manager has also

supported Mr. Merritt's statements -- in her previous Declaration Patricia Sullivan attested that

Defendants' shops "are extremely well maintained" and they were operating their shops in

accordance with Dunkin's standards and procedures.  (Pl. Ex. 7, Sullivan Decl. ¶¶ 7-8, 10, 15,

18, 23-24, 27-29, 31-32).

Plaintiffs point out that in Defendants' first counterclaim they allege that after Defendants were served with the Notices of Termination, Dunkin' materially breached the Franchise Agreements by failing to provide Defendants with operating manuals, for failing to update the manuals, limiting Defendants' opportunity for growth, applying materially different and more burdensome methods and standards when evaluating Defendants' shops.  (Counterclaim ¶ 58). However, Plaintiffs allege that throughout discovery Defendants have not identified any facts supporting these allegations.

The Court acknowledges that Mr. Merritt's Declaration provided in opposition to this motion does detail the flaws in Dunkin's health, sanitation and safety standards (i.e., issues regarding the milk and cream refrigeration containers, the sanitizing solution, and inconsistent and unreasonable standards), and Dunkin's failure to perform its contractual obligations (i.e., failure to provide current operating procedures, failure to provide support, training and consultation, failure to visit and assist shops, and the imposition of unreasonable standards of performance to set them up for failure).  (Pl. Ex. A, Merritt Decl.).

***Defendants' Damages:***

Throughout discovery, Defendants were required to supply information and documents supporting their claims for damages.  Plaintiffs contend that neither Defendants' Initial Disclosures nor Answers to Interrogatories provide either a dollar amount of their alleged damages or a computation thereof.  For example, Mr. Merritt's answer to paragraph 12 of the second set of interrogatories stated: "Defendants have expended hundreds of hours and tens of thousands of dollars in locating and developing a site in Jefferson, New Jersey, beginning in late

1993 through the time the Territory Development Agreement ("TDA") was originally discussed and negotiated in mid-1996 up through May 2000, when plaintiff purported to rescind the agreement with Defendants to develop the site on Route 15 South."  (Pl. Ex. 15, ¶ 13).

Defendants only computation of their damages, according to Plaintiffs, was provided by Defendants' proposed expert, Irwin Mittleman.  Mittleman only offered an opinion with respect to Defendants promissory estoppel counterclaim concerning the proposed development of a shop in Jefferson Township, New Jersey.  This expert opinion was ultimately struck by the Honorable Ronald J. Hedges, U.S.M.J., and Mittleman was precluded from testifying at trial concerning Defendants' damages.

By way of Mr. Merritt's Certification, Defendants contend that they have adduced evidence of damages.  Mr. Merritt sets forth the following statements that demonstrate such evidence was provided in discovery:

> [I]n my Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories I explicitly stated as follows:
> Defendant has suffered significant damages (i.e., millions of dollars), including but not limited to, lost profits from his Dunkin' Donuts shops, lost business opportunities due to being deprived of the right to qualify for expansion opportunities with Dunkin' Donuts, lost profits from the development of the Jefferson site, lost business opportunities and profits due to being deprived of the right to sell new products and take advantage of new technology and equipment, procedures and methodologies, and expenditure of a significant amount of unnecessary attorneys' fees and costs.

(Def. Ex. A, Merritt Decl. ¶ 46).

> [T]he documents supporting our claim for damages as they relate to Plaintiffs' wrongful rescission of the Jefferson Township franchise were listed as Exhibit 161 on our exhibit list [attached to the Final Pretrial Order].

(Def. Ex. A, Merritt Decl. ¶ 49).  In the Final Pretrial Order, Defendants describe Exhibit 161 as

"Jefferson Township cost and expense documents."

Mr. Merritt also supplements this evidence produced during discovery with further calculations in his Certification, provided in opposition to the present motion for summary judgment.  He states:

> 47.  Solely with respect to the lost profits as a result of Plaintiffs' wrongful rescission of their approval of the Jefferson Township franchise and breach of the Territory Development Agreement, we have suffered damages in the approximate amount of One Million Three Hundred Forty Five Thousand Dollars ($1,345,000.00).  Such figure is a very conservative amount and does not take into account the current sales being generated by a franchisee that is now operating a Dunkin' Donuts shop in what is rightfully our Jefferson TDA territory.  In fact, from May 18, 2000 to the present, we have repeatedly advised Dunkin' about that [sic] substantial damages that we are seeking for Dunkin's wrongful termination of the TDA.
>
> 48.  This amount is derived based on a variety of factors, including but not limited to, the following: (I) annual projected sales for the first year in the amount of One Million Fifty Nine Thousand Four Hundred Fifty Eight and 40/100 Dollars ($1,059,458.40); (ii) the fact that the market value of a Dunkin' Donuts shop is approximately one hundred ten percent (110%) of its gross sales based on my knowledge of the purchase and sale of Dunkin' Donuts shops; (iii) the amount of monies that we expended for the purchase of the real estate and the costs expended in pursuing this lost opportunity; and (iv) various purchase offers made to me for my other Dunkin' Donuts shops.

(Def. Ex. A, Merritt Decl. ¶¶ 47-48).

> In addition, as a result of Plaintiffs' failure to perform under the terms of the franchise agreement, as set forth above, we have suffered damages in the approximate amount of the total continuing franchise fees paid by us to Plaintiffs. Specifically, we paid continuing franchise fees under the terms of the franchise agreements; yet, Dunkin' did not provide us with support, training and consultation in exchange for such fees.  Dunkin' is already in the possession of the pertinent documents which reflect the amount of franchise fees paid by us.

(Def. Ex. A, Merritt Decl. ¶ 50).

### *The Proposed Development of a Dunkin' Donuts Shop in Jefferson Township, New Jersey:*

On September 6, 1996, Dunkin' and Defendant Double-D II entered into a Territory

Development Agreement ("TDA"), pursuant to which Double-D II was granted a license to develop a Dunkin' Donuts shop in a specific territory in Jefferson Township, New Jersey (the "Jefferson Township shop").  (Pl. Ex. 13).  Schedule C of the TDA provided that the Jefferson Township shop must be opened by September 15, 1997, over a year after the parties entered into the TDA. (Pl. Ex. 13, Sched. C).  Section 18 of the TDA stated: "No amendment, change or variance from this Agreement shall be binding on either party unless executed in writing."  (Pl. Ex. 13 ¶ 18).  Despite Defendants' failure to open their Jefferson Township shop by September 15, 1997, Dunkin' extended the TDA's deadline until the TDA was terminated on August 7, 1998.  (Pl. Ex. 14, Persico Cert. ¶¶ 4-6).

It appears that although the TDA was terminated, Plaintiffs continued to provide Defendants with additional time within which to develop the Jefferson Township shop.  (Pl. Ex. 14, Persico Cert. ¶ 7).  By letter dated February 26, 1999, Dunkin' conditionally approved Defendants' development of a proposed site, provided that the store opened by December 1, 1999.  (Pl. Ex. 14, Persico Cert. ¶ 8).  When this deadline was not met, by letter dated March 2, 2000, Dunkin' extended the deadline, to April 30, 2000, for Defendants to obtain engineering and design approval from Dunkin' (which were to be approved before submission to any governmental authority), to submit executed franchise documents, and to pay applicable fees. (Pl. Ex. 14, Persico Cert. ¶ 9).  The letter provided that failure to meet this deadline would result in "all approvals on this site rescinded and terminated."  (Pl. Ex. 14, Persico Cert. Ex. C).  It further provided that "There will be no further extensions beyond this date."  (Id.).  Defendants never sought or obtained Dunkin's approval on their engineering and design plans for the proposed Jefferson Township shop.  (Pl. Ex. 14, Persico Cert. ¶ 10).  The rescission of all

-9-

approvals was further confirmed in the May 18, 2000 Notice of Default and Termination.  The

final paragraph in this Notice stated: "Finally, Dunkin' Donuts hereby confirms its rescission of

approval of your proposed development of a Dunkin' Donuts shop on Route 15 in South

Jefferson, New Jersey."  (Pl. Ex. 1, Laudermilk Cert., Ex. E).  In Mr. Merritt's answers to

Dunkin's second set of interrogatories, he stated that the TDA did not expire on August 18, 1998.

(Pl. Ex. 15, ¶ 12).  The TDA was extended orally and in writing by Dunkin' Donuts until May

18, 2000 when the Notice of Default and Termination purported to rescind the TDA.  (Id.).

     Although Defendants had received the Notice of Default and Termination rescinding the

TDA, Mr. Merritt alleges that he continued to have conversations with Mr. Persico, from

Dunkin', about continuing to develop the Jefferson Township shop and was encouraged by Mr.

Persico to proceed.  (Def. Ex. A, Merritt Decl. ¶¶ 40-41).  Specifically, Mr. Merritt states: "Mr.

Persico advised me that we should continue to diligently pursue the development and

construction of the Jefferson shop and unequivocally led me to believe that we would still be

permitted to open the Jefferson shop despite the purported termination."  (Def. Ex. A, Merritt

Decl. ¶ 41).  In fact, Defendants did proceed to develop the Jefferson Township shop and on or

about August 29, 2000 Mr. Merritt verbally advised Mr. Persico that the Planning Board had

approved the project for the construction of his Jefferson Township shop.  (Def. Ex. A, Merritt

Decl. ¶ 43).  This approval was further confirmed in a letter from Mr. Merritt to Mr. Persico

dated October 5, 2000.  (Def. Ex. A, Merritt Decl. ¶ 44).  Mr. Merritt states that at no time did

Mr. Persico advise them that they were not permitted to continue with the project.  (Def. Ex. A,

Merritt Decl. ¶ 45).

## LEGAL STANDARD

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001).  "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  When considering a motion for summary judgment, all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 256.  "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence of which the jury could reasonably find for the [nonmovant]."  Id. at 252.  In order to defeat summary judgment, the non-moving party is required to identify the specific evidence of record which supports the claim and upon which a verdict in its favor may be based, and may not rest upon a vague argument that the record somewhere contains facts sufficient to support its claims.  Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988).

Conclusory statements and arguments do not raise triable issues which preclude summary judgment.  Ridgewood Board of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999).  Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported

motion for summary judgment." <u>Anderson</u>, 477 U.S. at 257 (citation omitted).  If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 321 (1986).  In <u>First Nat'l Bank v. Cities Service Co.</u>, 391 U.S. 253, 289-90 (1968), the Supreme Court stated that while it recognized "the importance of preserving litigants' rights to a trial on their claims," the Court refused "to extend those rights to the point of requiring that anyone who files a [] complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint."

## <u>LEGAL DISCUSSION</u>

The Court's present task is to determine whether genuine issues of material fact exist as to damages and whether plaintiff is entitled to judgment as a matter of law on all three of Defendants' counterclaims.  It is undisputed that all of the relevant Franchise Agreements contain a Massachusetts choice of law provision.

The issue here is really one about damages - whether Plaintiffs can demonstrate through admissible evidence sufficient facts that would permit a jury to arrive at an intelligent damages estimate without speculation or conjecture.  The answer is a resounding no with regard to the breach of contract claim, the breach of the covenant of good faith and fair dealing claim, and the promissory estoppel claim.  Each will be discussed in turn along with the Court's reasoning as to why the New Jersey Franchise Practices Act claim must proceed.

Plaintiffs assert that in light of the decisions by Magistrate Judge Hedges granting Plaintiffs' motion to strike Defendants' expert report of Irwin Mittleman and precluding him

from testifying at trial, Defendants counterclaims must fail as a matter of law because damages are an element of each of the three claims.  If Defendants cannot establish their damages at trial, then the claims must be dismissed.  Defendants' contend that genuine issues of material fact exist as to the amount of damages suffered in this action.  They argue that they have submitted ample evidence of their damages and, additionally, actual damages are not a necessary element for a breach of contract claim.

Since Defendants no longer have the benefit of expert testimony to present their damages, they must rely on non-expert testimony.  A review of Defendants' counterclaims reveal that Defendants request actual and compensatory damages, including attorneys' fees, costs and interest for the counterclaims.  In addition, the New Jersey Franchise Practices Act counterclaim also seeks treble damages.

Defendants bear the burden of proving their counterclaim damages to a reasonable degree of certainty, and may not be compensated for purely speculative damages.  They are entitled only to reasonable damages.  Mathematical certainty is not required in calculating damages, and an element of uncertainty is permitted.  Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 543 (Mass. 2003).  That said, Defendants "must establish [their] claim upon a solid foundation in fact, and cannot recover when any essential element is left to conjecture, surmise or hypothesis."  White Spot Constr. Corp. v. Jet Spray Cooler, Inc., 183 N.E.2d 719, 722 (Mass. 1960) (citation omitted).  Damages must nevertheless be proven and not left to speculation.  Hendricks & Assoc., Inc. v. Daewoo Corp., 923 F.2d 209, 217 (1st Cir. 1991).  To obtain an award of consequential damages for their lost profits and lost business opportunities, Defendants' damages must be "'capable of ascertainment upon some definite standard, either of market value,

-13-

established experience, or direct inference from known circumstances,' and an award of

consequential damages must be based on evidence which demonstrates 'with a fair degree of

certainty what the profits would have been.'"  Id. (quoting John Hetherington & Sons, Ltd. v.

William Firth Co., 95 N.E. 961, 963 (Mass. 1911)).

> Federal Rule 26(a)(1)(C) requires that a party must provide to other parties
>
> a computation of any category of damages claimed by the disclosing party,
> making available for inspection and copying as under Rule 34 the documents or
> other evidentiary material, not privileged or protected from disclosure, on which
> such computation is based, including materials bearing on the nature and extent of
> injuries suffered.

Fed. R. Civ. P. 26(a)(1)(C).  Since Defendants' Initial Disclosures did not set forth this

computation of damages, Defendants were under a duty to supplement their Initial Disclosures

when they acquired the pertinent information.  Fed. R. Civ. P. 26(e).  Such was never done.

According to Defendant Mr. Merritt, his Supplemental Objections and Responses to

Plaintiff's First Set of Interrogatories states that he has suffered "significant damages (i.e.,

millions of dollars)" in lost profits from his, lost business opportunities due to inability to

expand, "lost profits from the development of the Jefferson site, lost business opportunities and

profits due to being deprived of the right to sell new products and take advantage of new

technology and equipment, procedures and methodologies, and expenditure of a significant

amount of unnecessary attorneys' fees and costs."  (Def. Ex. A, Merritt Decl. ¶ 46).  Mr. Merritt

also asserts that Exhibit 161 on Defendants' exhibit list attached to the Final Pretrial Order

includes evidence supporting their damages claim.  Exhibit 161 is identified as "Jefferson

Township cost and expense documents."  There is no other evidence relating to Defendants'

alleged damages that has been presented to this Court, that was produced during discovery.

Discovery has long since closed and the parties filed their Final Pretrial Order on April 23, 2004.

In support of Defendants' opposition to Plaintiffs' present motion, Mr. Merritt supplements this evidence produced during discovery with damages calculations in his Certification. While these calculations in paragraphs 47, 48, and 50 of his Certification do set forth dollar figures for the first time -- $1,345,000.00 for wrongful termination of the TDA; and a refund of the franchise fees paid for failure to provide support, training and consultation services -- there is notably an absence of documentation to support these figures and no explanation as to how these figures were calculated. It is true that Mr. Merritt explains that, of the $1,345,000.00, $1,059,458.40 is the annual projected sales for the Jefferson Township shop, the alleged market value of the shop based solely on Mr. Merritt's knowledge of the market, the amount of money expended in purchasing the real estate, and other purchase offers made to him for his other shops. (Def. Ex. A, Merritt Decl. ¶¶ 47-48). However, this is speculation and no foundation is presented to this Court to substantiate these amounts. Further, merely stating that "Dunkin' is already in the possession of the pertinent documents which reflect the amount of franchise fees paid by us," (Def. Ex. A, Merritt Decl. ¶ 50), is not enough to demonstrate the calculation of their damages. In order to defeat summary judgment, the non-moving party is required to identify the specific evidence of record which supports the claim and upon which a verdict in its favor may be based, and may not rest upon a vague argument that the record somewhere contains facts sufficient to support its claims. Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988). Defendants' damages evidence is altogether inadequate as a matter of law; no factfinder would be able to arrive at a reasonable estimate of Defendants' damages without speculation or conjecture. See Scully v. US WATS, Inc., 238 F.3d 497, 515 (3d Cir. 2001).

Defendants argue that if they cannot demonstrate their damages, they are still entitled to nominal damages and attorneys' fees.  While Massachusetts law would permit Defendants to at least nominal damages for a breach of a contract, where no actual damages are proven, Damiano v. National Grange Mut. Liability Co., 56 N.E.2d 18, 20 (Mass. 1944), Defendants here never pled a claim for nominal damages, nor asserted such a claim in discovery.  Further, Defendants' general prayer for relief does not suffice.  See Arizonans for Official English v. Arizona, 520 U.S. 43, 71 (1997) ("a claim for nominal damages, extracted late in the day from [plaintiffs] general prayer for relief and asserted solely to avoid otherwise certain mootness, [bears] close inspection").  It appears evident to this Court that Defendants newfound claim for nominal damages arises out of a failure to ultimately prove actual damages and a desire to ultimately obtain attorneys' fees.  At oral argument, defense counsel explained that if a jury would not give them actual damages, "[t]hen the jury could say give them nominal damages for that, and we are entitled to attorneys' fees and costs which we had to incur.  (May 17, 2005 Oral Argument Transcript ("Tr.") at 57).  "At the very least, the nominal damages argument is foreclosed by dictates of Judicial Estoppel."  A.P. Boyd, Inc. v. Newark Pub. Sch., 44 Fed. Appx. 569, 571-72 (3d Cir. 2002) (citing New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him . . . This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (internal citations omitted)).  Thus, Defendants are precluded from resorting to

-16-

nominal damages when, all throughout discovery, Defendants only alleged actual and consequential damages.  Furthermore, if Plaintiffs knew that Defendants' were seeking solely nominal damages on their claims, Defendants counterclaims may have been settled long ago, hence avoiding unnecessary discovery, motion practice, and expert reports.

In Atlantic Research Mktg. Sys. v. Saco Defense, 997 F. Supp. 159, 165-66 (D. Mass. 1997), the court noted that the plaintiffs only asserted a claim for lost profits, not one for nominal damages, but then went on to theorize as to why a plaintiff

> would want to go to the time, trouble, and expense of proceeding with a lengthy trial on the liability issues raised . . . if there were no possibility of their recovering anything more than one dollar at the conclusion. Even if they did wish to do so and could persuade the court that they at least had a right to attempt to recover nominal damages, it might still be possible to avoid the issue altogether, if, for example, [defendants] were willing to make a voluntary payment (without prejudice) of one dollar to each plaintiff, thus eliminating any concern that dismissal might leave Plaintiffs with less than the full compensation to which the law entitled them.

This Court agrees.  While defense counsel has argued that "We are not here because we want to be here.  We are here because they brought us here. . . ," (Tr. at 57), the Court notes that Defendants have also filed their own counterclaims, as they are certainly entitled to do, which are the subject of the present motion.  Thus this case is being perpetuated.  Nevertheless, Defendants have not explicitly sought nominal damages and Plaintiffs had no notice that nominal damages were being sought.

Also at oral argument, defense counsel suggested, for the first time, that an element of his client's damages is attorneys' fees because the Franchise Agreements are unilateral and do not provide such fees for his clients if they prevail on their counterclaims.  (Tr. at 58).  Plaintiffs' counsel pointed out that Defendants must first establish the elements of their claims in order to

prevail and only then would they even have a claim for attorneys' fees.  (Tr. at 63).  Simply

stated, a party must prevail on all essential elements of their cause of action, including damages,

before attorneys' fees can even become an issue; thus attorneys' fees cannot be part of the prima

facie claim.

Therefore, since there is no question that Defendants' evidence of damages is insufficient

as a matter of law, any of Defendants' counterclaims that are contingent on an element of

damages will be dismissed.

**A.      Breach of Contract and Breach of Implied Covenant Counterclaims (Count I)**

Defendants first counterclaim asserts causes of action for breach of contract and breach of

the implied covenant of good faith and fair dealing arising from Plaintiffs' alleged failure to

comply with the express terms of the franchise agreements, in addition to Plaintiffs' allegedly

wrongful termination of the Jefferson Territory Development Agreement ("TDA").

"Under Massachusetts law, in order to sustain a cause of action for breach of contract, a

plaintiff must plead and prove that the parties had an agreement supported by valid

consideration; that plaintiff was ready willing and able to perform; and that plaintiff was

damaged."  Petricca v. Simpson, 862 F. Supp. 13, 17 (D. Mass. 1994).  Damages are an

unambiguous element of a breach of contract cause of action.  Moreover, damages must also be

established under a theory of breach of an implied covenant of good faith and fair dealing.  See

McCone v. New England Tel. & Tel. Co., 471 N.E.2d 47, 50 (Mass. 1984).

Ergo, Defendants' causes of action for breach of contract and breach of the implied

covenant of good faith and fair dealing in Count I must be dismissed since they are predicated on

proving some measure of damages, and this Court has already foreclosed nominal damages.

**B.     New Jersey Franchise Practices Act Counterclaim (Count II)**

In their second counterclaim, Defendants allege violations of the New Jersey Franchise Practices Act ("NJFPA"), N.J.S.A. § 56:10- 1, et seq.  The specific provisions at issue are N.J.S.A. § 56:10-5, for terminating the Franchise Agreements without good cause, and N.J.S.A. § 56:10-7, for imposing unreasonable standards of performance on Dough Boy.  Their counterclaim for violation of the NJFPA seeks actual, compensatory and treble damages, including attorneys' fees, costs and interest.

The NJFPA provides that a franchisor may not terminate a franchise without good cause to do so. N.J.S.A. § 56:10-5. Good cause is "limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise."  Id.  Defendants' civil remedy is provided in N.J.S.A. § 56:10-10 which states:

> Any franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief. Such franchisee, if successful, shall also be entitled to the costs of the action including but not limited to reasonable attorney's fees.

Although this latter section does specify that it is to "recover damages," the NJFPA does not explicitly require a showing of damages in order to establish a violation.  Given the importance of the NJFPA in protecting franchisees, this Court will not read this provision so restrictively. See, e.g., Westfield Centre Serv., Inc. v. Cities Serv. Oil Co., 386 A.2d 448, 464 (N.J. Super. Ct. Ch. Div. 1978) (allowing claim to proceed for nominal damages, attorneys fees, and possibly punitive damages, even though no actual damages were proven; however franchisee was not eligible for attorneys' fees for other unsuccessful claims brought against the franchisor).  Without permitting this claim to go forward, franchisees might not pursue purported violations of their

rights.  Thus, the Court will not dismiss this claim on the basis that no damages have been established.

The Court now turns to the merits of Defendants' NJFPA claims.  As already stated, Defendants' claims under the NJFPA are purportedly established based on the unreasonable standards of performance imposed upon Defendants, and the termination of the Franchise Agreements without good cause.  On these claims the Court agrees with Defendants; there are questions of fact as to each of these claims.

Whether Plaintiffs terminated the Franchise Agreements without good cause is not contingent on Defendants proving damages.  Admittedly, the Defendants have continued to operate their shops pending the outcome of this litigation, but it does not matter for purposes of establishing a violation that their sales have actually increased.   "New Jersey takes a restrictive view of what constitutes 'good cause' for termination."  Beilowitz v. GMC, 233 F. Supp. 2d 631, 644 (D.N.J. 2002).  "It is a violation of the NJFPA to cancel a franchise for any reason other than the franchisee's substantial breach, even if the franchisor acts in good faith and for a bona fide reason."  Atlantic City Coin & Slot Serv. Co. v. IGT, 14 F. Supp. 2d 644, 658 (D.N.J. 1998).

Defendants provide a litany of examples as to how Plaintiffs set them up for failure so that the Franchise Agreements could be terminated.  It is without doubt that if a franchisor manipulates the system causing a franchisee's breach so that a Franchise Agreement is terminated, the termination occurs without good cause in violation of the NJFPA, N.J.S.A. § 56:10-5.  Drawing all inferences in the light most favorable to the non-moving party, the Court finds that a reasonable jury may, after considering Mr. Merritt's testimony, find that Defendants' shops were operated in accordance with Plaintiffs' standards and procedures, and that there was

no "substantial breach" justifying termination.  Similarly, under this set of facts, whether the standards that Dunkin' imposed on Defendants constituted an "unreasonable standard[] of performance" are questions for a jury.  N.J.S.A. § 56:10-7(e); Carlo C. Gelardi Corp. v. Miller Brewing Co., 502 F. Supp. 637, 653 (D.N.J. 1980) (where court denied summary judgment where fact issue existed as to whether unreasonable standards of performance were imposed upon distributor).  Hence, Plaintiffs' motion for summary judgment on Defendants claims under the NJFPA is denied.

## C.      Promissory Estoppel Counterclaim (Count III)

Lastly, in Count III of their counterclaim, Defendants' assert a cause of action for promissory estoppel.  Defendants' promissory estoppel claim arises from Plaintiffs' alleged encouragement to continue to develop the Jefferson Township shop notwithstanding the rescission of the TDA - thus it involves the time frame after the rescission of the TDA when no contract existed.

To prevail on a promissory estoppel claim, Defendants must present evidence that Plaintiffs made:

> (1.) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2.) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3.) Detriment to such person as a consequence of the act or omission.

Clickner v. City of Lowell, 663 N.E.2d 852, 856 (Mass. 1996). Under Massachusetts law, damages are "an essential element of a claim for promissory estoppel." Veranda Beach Club Ltd. Partnership v. Western Sur. Co., 936 F.2d 1364, 1381 (1st Cir. 1991) (citing Hall v. Horizon House Microwave, Inc., 506 N.E.2d 178, 184 (Mass. App. Ct. 1987).  Therefore, Defendants'

promissory estoppel claim must be dismissed as it fails for lack of damages.

## **CONCLUSION**

For the reasons set forth above, this Court concludes that Plaintiffs' motion for summary judgment [Docket #82] is GRANTED as to Counts I and III of Defendants' counterclaims, and DENIED as to Count II of Defendants' counterclaims. The parties are advised to contact my Deputy Clerk, Lissette Rodriguez, to schedule a trial date for this matter. An appropriate Order follows.


Dated: December 29, 2005               /s/ Jose L. Linares_____
                                        UNITED STATES DISTRICT JUDGE